El Pueblo de Puerto Rico, demandante y apelado, *v.* José Cartagena, acusado y apelante.

Núm. 7417.—*Sometido:* Marzo 17, 1939. *Resuelto:* Mayo 22, 1939.

*Joaquín Velilla,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

José Cartagena fué acusado de un delito de atentado a la vida, consistente en que el 26 de enero de 1936 y en el barrio Vista Alegre, de Bayamón, ilegal y voluntariamente, con malicia premeditada y propósito firme de dar muerte a Jerónimo Colón, lo atacó con un revólver, haciéndole un disparo e infiriéndole una herida de bala en el vientre con la intención de privarlo de la vida.

La prueba del fiscal tiende a demostrar que el caso sucedió en la siguiente forma: El día 26 de enero de 1936 José Cartagena se hallaba en el balcón de su casa en el barrio Vista Alegre, de Bayamón, preparando una lista de peones que a petición de Félix Alvarez le iba a someter para que dicho señor les diese trabajo en las fincas que posee en Bayamón. Frente al balcón de su casa había un grupo de veinte o veinticinco personas que deseaban ser incluídas en la lista. El propósito de Cartagena era seleccionar los peones exclusivamente de aquellas personas que perteneciesen al Partido Liberal. En aquellos momentos pasó frente a la casa de Cartagena el obrero José Rivera Morales, quien en unión de otros se acercó al grupo de donde Cartagena seleccionaba los peones, diciéndole Cartagena: "No se arrimen ni socialistas ni republicanos, que esto es nada más que para los liberales." José Rivera Morales, que creyó que la lista se preparaba para trabajos de la P.R.R.A., protestó de que sólo se escogiesen liberales y con ese motivo se produjo una discusión entre Cartagena y Rivera Morales, diciéndose mutuamente palabras soeces e injuriosas. Que con motivo de estas palabras Cartagena, que continuaba en el balcón de su casa, sacó su revólver e hizo un disparo contra Rivera Morales, que se hallaba abajo junto al grupo, hiriéndole la bala en una oreja e hiriendo a la vez a Jerónimo Colón que se hallaba a alguna distancia del grupo observando lo que allí ocurría.

La prueba del acusado tiende a establecer la defensa propia al presentar evidencia en el sentido de que Rivera Mora-

les provocó primero a Cartagena por no haberlo puesto en la lista y que más tarde, volviendo al sitio acompañado de algunos familiares y armado de un cuchillo, abrió el portón de la verja y trató de pasar al balcón de Cartagena para agredirlo, y que éste en defensa de su vida pidió a su esposa un revólver, haciendo entonces el disparo cuyo resultado conocemos.

El jurado que conoció de la causa lo declaró culpable de acometimiento y agresión grave, siendo condenado a la pena de un año de cárcel.

Recurrió Cartagena para ante este tribunal. Fundó su recurso en once errores que alega fueron cometidos por la corte inferior. Los cinco primeros y el último se hallan íntimamente relacionados. Los discutiremos conjuntamente. Se exponen así:

"1. El Tribunal inferior incurrió en error al declarar sin lugar una eliminación, suscitada por la defensa, mientras declaraba el testigo de cargo Jerónimo Colón.

"2. El Tribunal inferior incurrió en error al permitir, sobre la objeción de la defensa, que el testigo José Rivera Morales declarara sobre diferencias surgidas entre él y el acusado y que originaron la agresión recibida por el perjudicado, en el presente caso.

"3. El Tribunal inferior incurrió en error al denegar la eliminación, por reconsideración solicitada por la defensa, del testimonio de José Rivera Morales.

"4. El Tribunal inferior incurrió en error al denegar la moción de *nonsuit* presentada por el acusado, al cerrar su caso el ministerio público.

"5. El Tribunal inferior incurrió en error al transmitir el Juez la siguiente instrucción al jurado: 'Aunque en la malicia expresa es necesario una intención de matar, sin embargo, no es necesario que exista la intención de matar a determinada persona. Si el acto cometido por el acusado iba dirigido a otra persona, se le exige la misma responsabilidad que si lo hubiera cometido contra dicha persona.'

"11. El veredicto emitido por el jurado que conoció de esta causa en el tribunal inferior es contrario a derecho y a la prueba."

■ La resolución de los seis señalamientos de error aquí agrupados depende de la forma en que se resuelva la siguiente pregunta: Bajo una acusación por asesinato en que se acusa a *C* de haber dado muerte a *B* ilegal y voluntariamente, con malicia premeditada y el firme propósito de matarlo, ¿es admisible evidencia tendente a demostrar que la muerte de *B* resultó incidentalmente mientras *C,* de manera ilegal y con malicia premeditada, acometía a *A* con el firme y deliberado propósito de privarle de la vida?

El principio de intención implícita (*constructive intent*) tiene raíces tan profundas en la Ley Común que no requiere cita de autoridades para sostenerlo; pero la cuestión suscitada por el apelante no es de derecho sustantivo sino de derecho adjetivo, particularmente de evidencia en casos criminales. Mientras todas las autoridades están de acuerdo en que si una persona con la intención de matar a otra le ataca e incidentalmente mata a un tercero contra quien no tenía intención alguna de hacerle daño, es culpable lo mismo que si el interfecto hubiera sido la persona contra quien fué dirigida la agresión, no están, sin embargo, en armonía respecto a la cuestión de evidencia suscitada por el apelante en este recurso.

La cuestión no es nueva en esta jurisdicción. En el caso de *El Pueblo* v. *Estrella,* 42 D.P.R. 342, la denuncia imputaba al acusado el haber acometido y agredido con un revólver, ilegal y voluntariamente y con intención de causar grave daño corporal, a Gustavo Palés Matos, disparando varios tiros con uno de los cuales le hirió en el brazo derecho, etc. La prueba demostró, sin embargo, que el acusado, siendo entonces un policía insular, ''corría en persecución de cierto individuo de quien razonablemente sospechaba que había cometido un hurto y quien después de estar en la entrada del cuartel, le dió un golpe y echó a correr; que el herido, Gustavo Palés Matos, estaba en un coche automóvil, tranquilamente sentado, cuando Estrella disparó su revólver dos veces y una de las balas hirió a Palés, que era extraño a la fuga

· del detenido.'' El acusado fué convicto por la corte munici-
pal primero y por la de distrito después, y al apelar de la
sentencia de esta última, alegó como primer error el haberse
declarado el acusado culpable sin probarse su intención de
causar un daño grave a Gustavo Palés Matos. Discutiendo
dicho primer error dijo esta corte:

''En la ley y en la jurisprudencia es doctrina antigua y cons-
tante la de que toda persona intenta la consecuencia natural de sus
actos. El que dispara un revólver contra una determinada persona
y hiere a otra, es responsable de delito, sea homicidio, sea lesión el
resultado del disparo.''

En el caso de *El Pueblo* v. *Cabán*, (1931) 45 D.P.R. 217,
Cabán fué acusado de un delito de atentado a la vida, con-
sistente en que ''el día 20 de abril de 1930, ilegal, volunta-
ria y maliciosamente, con premeditación y propósito delibe-
rado de dar muerte al ser humano Rosario Rodríguez, la
agredió con un revólver infiriéndole una herida de bala de
carácter grave con la intención de cometer asesinato.'' En
el recurso de apelación que estableció para ante este tribunal,
al considerar los señalamientos de error numerados 3, 4 y 5,
dijo esta corte:

''Esos tres motivos pueden ser tratados conjuntamente porque to-
dos descansan en la teoría de que no se ha probado que el apelante
agrediera a Rosario Rodríguez con un revólver y la hiriera delibe-
radamente con el propósito de cometer asesinato, pues la prueba ten-
dió a demostrar que la agresión y el disparo del revólver fueron
contra César Rodríguez y que si Rosario resultó herida fué porque
la bala se desvió y casualmente la lesionó.

''El apelante cita en su apoyo sentencias relacionadas en notas
de 30 C. J., pág. 25, párrafo 167 (*h*), para demostrar que cuando un
acusado trata de asesinar a una persona y hiere a otra, no puede ser
condenado por asesinato o tentativa de asesinato de la persona he-
rida; pero el apelante prescinde de las citas de otras sentencias con-
trarias que se encuentran citadas en el mismo párrafo de la obra
Corpus Juris, según las cuales cuando un hombre dispara delibera-
damente contra una persona y hiere equivocadamente a una tercera
persona, el acusado puede ser convicto de ataque con intención de

asesinar a la persona herida o de ataque con intención de matarla cuando ése es el delito imputado; sentencias que se basan en distintas teorías, siendo una de ellas la de que hay estatutos que por sus palabras no limitan la intención de matar a la persona atacada. Nuestro Código Penal dispone en el apartado 8 del artículo 39 que si el cto cometido iba dirigido a otra persona, se exigirá al autor la misma responsabilidad que si lo hubiera cometido contra dicha persona. De acuerdo con ese precepto y toda vez que el acto del apelante iba dirigido contra César Rodríguez, se le puede exigir por la herida grave causada a Rosario Rodríguez la misma responsabilidad que por el atentado contra César Rodríguez. En el caso de *El Pueblo* v. *Estrella,* 42 D.P.R. 342, hemos confirmado la sentencia que condenó a Estrella por haber disparado contra una persona y haber herido ocasionalmente a otra extraña a la cuestión; y dijimos que es doctrina antigua y constante en la ley y en la jurisprudencia que toda persona intenta las consecuencias naturales de sus actos; y que el que dispara un revólver contra una persona determinada y hiere a otra es responsable de delito, sea homicidio, sea lesión el resultado del disparo.''

En el caso de *Carpio* v. *State,* (1921) 18 A.L.R. 914 (199 P. 1012), la Corte Suprema de Nuevo Méjico resolvió en igual forma idéntica cuestión. Los hechos del caso fueron los siguientes: El 4 de agosto de 1919, el apelante asistió a un baile que se celebraba en el pueblo de Central, Condado de Grant, en Nuevo Méjico. Invitó Carpio a bailar a una joven llamada Julia Olguin, y ella rehusó. Entonces él le dijo que de no bailar con él no podría bailar con nadie. Después salió ella a bailar con Casamero Lucero y el apelante agarró a Lucero y le dijo que no podía bailar con Miss Olguin. Lucero le dió una bofetada o lo empujó y otros individuos lo echaron fuera y cerraron la puerta. Más tarde, Efren Ríos entró al salón de baile y le dijo a Lucero que Carpio, el apelante, lo quería ver afuera. Lucero salió seguido por Ríos y se acercó al apelante, pero cuando estaba como a catorce o quince pasos de éste, el apelante le dijo que se detuviera, e inmediatamente después hizo fuego contra Lucero y la bala hizo blanco en Ríos y lo mató.

La primera cuestión levantada por el acusado fué que existía una incongruencia fatal entre la acusación y la prueba presentada por el fiscal, toda vez que la acusación alegaba que el acusado, criminal, voluntaria y deliberadamente y con malicia premeditada y el deliberado propósito allí y entonces de ilegal y maliciosamente privar de la vida a Efren Ríos, acometió y disparó contra dicho Ríos y que como resultado de la herida recibida falleció éste, mientras la prueba demostraba que la malicia y deliberación fueron dirigidas contra Lucero y no contra Ríos. Resolviendo la cuestión dicha corte dijo:

"Este argumento carece de mérito, sin embargo, porque ante la ley la malicia y deliberación se traspasaron de Lucero a Ríos. En otras palabras, la malicia siguió a la bala. En *Wharton on Homicide,* tercera edición, sección 359, el autor dice así: 'Es regla casi, si no universalmente aceptada, que uno que mata a otro equivocándolo por un tercero a quien intentaba matar, es culpable o inocente del delito imputádole lo mismo que si el acto fatal hubiera matado la persona que intentaba matar. . . . Y una acusación de que un asesinato fué cometido voluntaria y deliberadamente y con malicia premeditada se sostiene con evidencia de que el acto fué realizado bajo el estado mental mencionado, aunque fuese dirigido contra persona distinta de la que resultó muerta.' "

En el curso de su opinión la Corte Suprema de Nuevo Méjico cita y aprueba el caso de *Brooks* v. *State,* 141 Ark. 57, donde los hechos son sustancialmente iguales a los de autos, y en el cual dicho tribunal resolvió que la acusación en casos como éste debe alegar que el acometimiento se hizo a la persona asesinada tal y como si en todos respectos el interfecto hubiera sido la persona contra quien disparó el acusado. La misma doctrina sostuvo la Corte Suprema de Missouri en el caso de *State* v. *Clark,* 147 Mo. 20, 47 S. W. 886.

La doctrina sentada por este tribunal en los casos de Estrella y Cabán, supra, está sostenida por la inmensa mayoría de la jurisprudencia moderna. Véanse a ese efecto *People* v. *Weeks,* (1930, Cal.) 286 P. 514, 515; *Caraway* v. *State,*

(1923, Tex.) 263 S. W. 1063, 1064; *Agent* v. *State,* (1921, Okla.) 194 P. 233, 238; *State* v. *Gallagher,* (1921, N.J.) 85 A. 207; *Ware* v. *State,* (1930, Okla.) 288 P. 374, 383; y *Jones* v. *State,* (1921, Tex.) 231 S. W. 122, 124. Finalmente, *Underhill on Criminal Evidence,* refiriéndose a la misma cuestión, dice que la tendencia moderna es evitar el fracaso de la justicia por meros tecnicismos. Véase la cuarta edición de dicha obra, publicada en 1935, sección 86, pág. 109.

La prueba en el presente caso fué contradictoria en lo que a la defensa propia se refiere, pues mientras de las declaraciones de los testigos del fiscal no se desprende que el acusado en forma alguna hubiera actuado en defensa propia, la declaración de este último y la de su único testigo que declaró, tienden a demostrar que disparó contra Rivera Morales mientras este último trataba de atacarlo con un cuchillo. El jurado, al apreciar la evidencia, dirimió el conflicto en contra del acusado, sin que se haya demostrado que al hacerlo así actuara movido por pasión, prejuicio o parcialidad, ni que hubiera incurrido en error manifiesto en la apreciación de la prueba. Por consiguiente, habiendo aplicado a la evidencia la ley que en sus instrucciones le transmitió la corte, cuyos principios hemos discutido anteriormente, preciso es concluir que el veredicto no es contrario a la prueba ni tampoco es contrario a la ley.

█ Alteraremos el orden en que el apelante ha expuesto los demás señalamientos de error, considerando primeramente el noveno para pasar luego a los restantes en el orden establecido.

El noveno señalamiento de error dice así:

"El tribunal inferior incurrió en manifiesto error al no hacer a los señores del jurado una relación o resumen de la prueba practicada."

Prescribe el inciso 8°. del artículo 233 del Código de Enjuiciamiento Criminal (ed. 1935) que al transmitir sus instrucciones al jurado el juez que presida deberá hacer un re-

sumen o análisis de toda la evidencia aducida tanto por el fiscal como por la defensa. Este resumen de la prueba, oído de labios de una persona experta y sin otro interés en el resultado del juicio que no sea el de que se haga completa justicia de acuerdo con la ley, es de inestimable valor para auxiliar al jurado a cumplir su difícil y delicada misión, pues sirve un doble propósito: refresca la mente del jurado, especialmente en aquellos casos en que ha desfilado ante ellos una evidencia extensa y frecuentemente interrumpida por incidentes que tienden a desviar su atención, y además guía y dirige la mente del jurado a los hechos esenciales del caso, sobre los cuales ha de girar su veredicto. En casos como el de autos, donde la evidencia es breve y exenta de complicaciones, los jueces frecuentemente prescinden del resumen o análisis de la prueba por estimarlo innecesario. Al proceder así, no incurren en error que cause revocación, a menos que pidiéndoseles que hagan tal resumen se negaren a ello y de su negativa se tome excepción, teniendo siempre en cuenta que ningún error motivará la revocación de la sentencia cuando no se hayan perjudicado los derechos sustanciales de la parte. *El Pueblo* v. *Ortiz*, 19 D.P.R. 305, 306. Véase además el artículo primero de la "Ley relativa a la revocación de sentencias en casos criminales por la Corte Suprema", aprobada el 30 de mayo de 1904 en la sesión extraordinaria de ese año, y que se halla en las leyes de 1904–1905, pág. 16, que literalmente dice así:

"Art. 1.—Siempre que resultare de los autos, en alguna causa criminal apelada a la Corte Suprema, que cualquier requisito legal haya sido desatendido por el tribunal sentenciador, no se anulará la sentencia a menos que el error que de los autos resultare *tendiere a perjudicar los derechos de cualquiera de las partes, y se hubiere interpuesto la debida excepción en el tribunal sentenciador;* disponiéndose, sin embargo, que el tribunal de apelación podrá conocer de *errores fundamentales* que aparecieren en los autos, *aun cuando no se hubiera interpuesto objeción a ellos,* y fallar sobre los mismos con arreglo al derecho que de los hechos se desprendiere." (Bastardillas nuestras.)

No constituyendo error fundamental la omisión del resumen o análisis de la prueba y no constando de los autos que la defensa llamase la atención de la corte y que de su negativa tomase la debida excepción, no tiene derecho a señalarlo como error en apelación.

■ La corrección o suficiencia de las instrucciones al jurado no se resuelve considerando y analizando determinada instrucción aisladamente de las demás, sino considerándolas como un todo, pues lo que se dice en una puede explicar, aclarar o rectificar lo que incorrectamente se haya dicho u omitido en otra. Hemos examinado las de este caso cuidadosa y detenidamente y no encontramos en ellas error alguno que justifique una revocación.

A nuestro juicio no existe el noveno error señalado por la defensa.

■ Los señalamientos de error marcados sexto y séptimo están íntimamente relacionados y se refieren a las instrucciones con respecto a defensa propia. Los consideraremos conjuntamente:

"Sexto: El tribunal inferior incurrió en error cuando, refiriéndose a la defensa propia, transmitió el juez la siguiente instrucción al jurado: 'La teoría dentro del hogar, de la defensa propia: esta última circunstancia hace más rígida la defensa propia. La ley considera como circunstancia justificativa del homicidio, la de cometerse al defenderse una morada u hogar contra alguien que intente o procure, por medio de violencia o sorpresa, cometer algún delito grave; o que intente o procure violentamente penetrar a una morada u hogar de otro con el propósito de agredir a alguna persona que se hallare en ella.'

"Séptimo: El tribunal inferior incurrió en error cuando, instruyendo a los señores del jurado sobre los veredictos que podían considerar, se expresó el juez en los siguientes términos: 'Si por el contrario creéis que de acuerdo con la teoría del acusado y prueba total del caso que el acusado actuó en defensa propia $y$ en defensa de su hogar, entonces el veredicto será de no culpable.' "

Alega la defensa bajo el sexto señalamiento de error que la corte erró en sus instrucciones al hacer referencia a la de-

fensa del hogar, diciendo que en tal caso "la defensa propia es más rígida."

Aparte de que no podemos asegurar qué pudo entender el jurado por la frase *"la teoría dentro del hogar, de la defensa propia: esta última circunstancia hace más rígida la defensa propia,"* y por consiguiente determinar qué perjuicio pudo haber sufrido el acusado con motivo de tal instrucción, si se examina toda la instrucción sobre defensa propia, especialmente en relación con la defensa propia dentro del hogar, se verá que expone correctamente la ley sobre la materia. La instrucción dice así:

"La teoría dentro del hogar, de la defensa propia: esta última circunstancia hace más rígida la defensa propia. La ley considera como circunstancia justificativa del homicidio, la de cometerse al defenderse una morada u hogar contra alguien que intente o procure por medio de violencia o sorpresa, cometer algún delito grave; o que intente o procure violentamente penetrar a una morada u hogar de otro con el propósito de agredir a alguna persona que se hallare en ella." (Legajo de sentencia, pág. 70.)

Resulta más clara esta instrucción cuando se estudia en relación con la siguiente:

"En este caso se ha planteado también la teoría de la defensa propia. La persona contra quien se intente algún daño podrá oponer la necesaria resistencia para impedir una ofensa contra su persona y la persona que sea atacada por otra no está obligada a huir, esconderse o correr por las calles o caminos para ponerse a salvo de su agresor." (Legajo de sentencia, 67.)

No se cometió, a nuestro juicio, el sexto de los errores señalados.

▬▬ Argumentando el séptimo señalamiento de error sostiene el apelante que "en ningún momento se sostuvo por nadie, ante el tribunal apelado, que José Rivera Morales intentara atacar el hogar del acusado, si no fuera por la natural inferencia de que atacado el morador se afecta el hogar donde se le ataca." También sostiene el apelante que la copulativa *"y"* que pusimos en bastardilla al transcribir la ins-

trucción impugnada, causó grave perjuicio al acusado porque indicó al jurado que para absolver al acusado por motivo de defensa propia tenían ellos que estimar probado que el acusado actuó en defensa de su persona y además en defensa de su hogar.

En cuanto a la primera objeción, bastará decir que la defensa de morada no está limitada al caso de que se trate de destruir la casa donde vive el acusado, sino que comprende la defensa de cualquier persona, sea o no el acusado, que fuera atacada mientras se halle dentro del hogar de éste. *Pueblo* v. *Méndez*, 40 D.P.R. 757; *Pueblo* v. *Gómez*, 47 D.P.R. 340. Como hemos visto, la prueba de la defensa tiende a demostrar que el acusado se hallaba en el balcón de su casa cuando disparó contra Rivera Morales al tratar éste de agredirlo con un cuchillo.

En cuanto a la segunda objeción, asumiendo que la copulativa *"y"* no sea un error del taquígrafo al hacer la transcripción, considerada ésta junto con las demás instrucciones transmitidas en relación con la defensa propia, se comprende fácilmente que no fué la intención del juez decirle, ni pudo el jurado entender, que para que el acusado pueda alegar con éxito la defensa propia es preciso que haya atacado en defensa de su vida y además en defensa de su hogar. Si en realidad se cometió ese error, ¿por qué la defensa no lo advirtió al juez inmediatamente de suerte que pudiera corregirlo? Tampoco aparece de los autos que la defensa tomara excepción a las instrucciones relativas a la defensa propia. Sus únicas excepciones fueron las siguientes:

"La defensa anota excepción a las instrucciones trasmitidas por la corte sobre asesinato y sobre homicidio, así como sobre los veredictos que pueda rendir el jurado, por entender que bajo esta acusación que está ventilándose sólo puede haber tres veredictos: 1, culpable de atentado a la vida; 2, culpable de acometimiento y agresión grave; ó 3, no culpable.

"Y que las instrucciones sobre otros veredictos y otros delitos mueve a confusión a los señores del jurado, poniendo en entredicho

sus intereses al estudiar y considerar la prueba presentada en el caso del veredicto que deba emitir.''

Las excepciones a las instrucciones deben señalar específicamente el error que crea la parte haberse cometido, de suerte que la corte tenga una oportunidad razonable de considerarlas de nuevo y rectificar si se convenciere de que la instrucción transmitida es errónea o no es suficientemente clara o exacta. La ley con respecto a defensa propia es bastante amplia, comprende distintas modalidades, y en un caso como el presente, en que el juez instruyó sobre todas las modalidades de esta defensa, difícil le hubiera sido advertir cualquier error en las mismas si la defensa simplemente hubiera tomado excepción a las instrucciones sobre defensa propia sin especificar o señalar el error que motivaba la excepción.

El octavo señalamiento de error dice así:

''El tribunal inferior incurrió en error al expresarse el juez, transmitiendo instrucciones finales, en la siguiente forma: 'Si tenéis duda, cualquiera que fuere, en que el acusado ha cometido alguno de estos delitos que os he especificado, pero existe duda en cuanto al grado en que él haya podido incurrir en responsabilidad criminal, entonces es vuestro deber darle el beneficio de esa duda al acusado y declararlo culpable del delito más bajo.' ''

Argumentando este señalamiento de error dice la defensa:

''Bajo esta instrucción se instruye a los señores del jurado que si albergan duda sobre si el acusado cometió cualquiera de los delitos definidos por el juez inferior, que es deber de ellos declararlo culpable del delito más bajo, en vez de instruirlos en que, bajo las circunstancias de duda en cuanto a si el acusado cometió cualquiera de ellos, era su deber adjudicarle el beneficio de esa duda, absolviéndolo libremente.''

Si se examinan cuidadosamente las instrucciones de la corte, se verá que contienen una amplia instrucción con respecto a la presunción de inocencia a favor del acusado y a la duda razonable. De manera, pues, que esta instrucción deberá ser analizada y estudiada en relación con las demás

instrucciones transmitidas con respecto a duda razonable y a presunción de inocencia. Como dijimos anteriormente, el acusado no señaló de manera específica al tomar excepción, en qué consistía el defecto de esta instrucción. Por el contrario, sólo se limitó a decir *"que las instrucciones sobre otros veredictos y otros delitos mueven a confusión a los señores del jurado, poniendo en entredicho sus intereses al estudiar y considerar la prueba presentada en el caso del veredicto que deba emitir."* (Bastardillas nuestras.)

A este respecto parece muy oportuna la siguiente frase del eminente Juez Cardozo:

"La ley . . . es celosa al sostener en favor de una persona acusada de delito cualesquiera formas de procedimiento que sean esenciales para darle una oportunidad de defenderse. Los privilegios fundamentales que son inherentes a cualquier concepto de un juicio justo, aceptable por cualquier persona razonable, deben ser mantenidos inviolados e inviolables no obstante lo aplastante que pueda resultar la presión de prueba incriminatoria. Pero la justicia, aunque debida al acusado, es también debida al acusador. El concepto de lo justo no debe ser estirado hasta reducirlo a un filamento. Debemos procurar el justo medio." *Snyder* v. *Massachusetts,* 291 U. S. 97, 122.

El décimo señalamiento de error, último a considerar, dice así:

"El tribunal inferior incurrió en error al instruir a los señores del jurado sobre los distintos veredictos que podían considerar."

Argumentando este señalamiento de error alega la defensa que la corte, bajo la prueba de este caso, no debió dar instrucciones con respecto a ataque para cometer homicidio. Se trata en este caso de una acusación por atentado a la vida. Se alegó por el acusado la defensa propia y al mismo tiempo provocaciones por parte de la persona contra quien él disparó su arma. En tales circunstancias es indudable que procedía la instrucción sobre homicidio voluntario, pues como de haber muerto Jerónimo Colón hubiera existido en la prueba base suficiente para sostener un veredicto de homicidio vo-

luntario, no habiendo él muerto, el jurado podía rendir un veredicto de taque con intención de cometer homicidio. Pero sea como fuere, la cuestión resulta académica, pues el jurado rindió un veredicto de acometimiento y agresión grave, no pudiendo causarse perjuicio alguno al acusado al dar instrucciones sobre el delito de ataque con intención de cometer homicidio, ya que el jurado no estimó que tal delito se hubiera cometido.

*No existiendo los errores señalados por el apelante, procede desestimar el recurso y confirmar la sentencia apelada.*