El Pueblo de Puerto Rico, demandante y apelado, v. Luis R. Lampón Sierra, acusado y apelante.

Número 15728.

*Sometido:* 1 de marzo de 1955. *Resuelto:* 29 de marzo de 1955.

110

*Benicio Sánchez Castaño y R. Rivero Cervera,* abogados del apelante; *Hon. Secretario de Justicia José Trías Monge, Rafael L. Ydrach Yordán y Ramón Olivo Nieves, Fiscal y Fiscal Especial, respectivamente, del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Luis H. Lampón Sierra y Francisco Arrufat fueron acusados ante el Tribunal Superior de Puerto Rico, Sala de San Juan, de haber infringido el art. 83 del Código Penal de Puerto Rico (¹) porque actuando conjuntamente, allá para los meses de julio o agosto de 1950 y en el Barrio Puerto Nuevo, de San Juan, mientras desempeñaban ambos un cargo de Auxiliar de Ingeniería del Negociado de Permisos del Gobierno de Puerto Rico, de manera ilegal, intencional, voluntaria, criminal y corrupta, pidieron un soborno a Alfonso Pérez Matos por conducto de Manuel Ramírez de Choudéns, recibiendo de aquél por conducto de éste la suma de $75, con el entendido de permitir a Pérez Matos continuar construyendo ilegalmente una obra que llevaba a efecto en una edificación de su propiedad en dicho barrio, sin haber obtenido el correspondiente permiso autorizándole a llevar a efecto dicha obra.

Celebrado el juicio conjuntamente ante jurado, ambos acusados fueron hallados culpables del delito imputádoles. El tribunal a quo sentenció a cada uno de ellos a cumplir una pena de uno a cinco años de presidio, con trabajos forzados. Ambos apelaron. El recurso de Arrufat, sin embargo, fué

---

(¹) El art. 83 del Código Penal dispone lo siguiente:

"Todo funcionario ejecutivo, o persona elegida o nombrada para un cargo ejecutivo, que pidiere, aceptare o conviniere en aceptar, cualquier soborno, con el entendido o en la inteligencia de que tal soborno habrá de influir en su voto, opinión o determinación en cualquier asunto pendiente o sometido a su decisión, en su calidad de funcionario, incurrirá en pena de presidio por un término mínimo de un año y máximo de catorce años, perdiendo, además su empleo y quedando por siempre inhabilitado para ejercer ningún cargo público."

La enmienda introducida a este artículo por la Ley núm. 166 de 30 de abril de 1952 (pág. 345) no desempeña aquí papel de clase alguna.

desestimado por habernos éste informado por escrito que no tenía error alguno que señalar.(²)    Lampón Sierra imputa al tribunal sentenciador la comisión de los errores que pasamos a discutir en seguida:

■■  El primero de ellos es haber hecho el tribunal comentarios que a su juicio tuvieron el efecto de influir en el jurado respecto al peso y suficiencia de la prueba de cargo, así como sobre su culpabilidad.    En apoyo de su contención cita lo siguiente:

"Hon. Fiscal: Yo quería anunciar que hemos decidido no presentar prueba de *rebuttal.*
"Hon. Juez: Eso lo había yo dado por descontado."

Sostiene el apelante que las anteriores manifestaciones del juez le perjudicaron, toda vez que las mismas podían ser interpretadas por el jurado en el sentido de que a juicio del juez el fiscal no necesitaba presentar prueba adicional alguna para lograr la convicción del acusado.    Empero, si consideramos las circunstancias que llevaron al juez a hacer dichas manifestaciones, resulta evidente que éstas no eran susceptibles de la interpretación que le da el apelante.    Veamos: terminada la prueba de la defensa el fiscal solicitó 10 minutos de receso "para presentar prueba de *rebuttal* o si no para iniciar los informes."    Casi en seguida uno de los miembros del jurado solicitó permiso para hacer dos preguntas a los acusados.    En vista de ello, éstos volvieron a ocupar la silla de los testigos y fueron interrogados y contrainterrogados por las partes.    Decretado entonces un receso ocurrió lo siguiente al reanudarse la sesión:

"Hon. Juez: ¿Aceptan que el jurado es el mismo y está completo?
"(Ambas partes contestan que sí.)
"Hon. Juez: Puede informar el fiscal.    El fiscal tiene hasta las once y cinco y la defensa hasta las once y treinta y cinco y el fiscal hasta las doce.    Voy a dar las instrucciones a las dos de la tarde.

---

(²) Véase nuestra resolución de 7 de mayo de 1954.

"Lic. Marrero Ledesma: El compañero Mieres Calimano, que es abogado del señor Lampón, consumirá un turno a favor de él y este abogado, que es solamente abogado de Arrufat, va a consumir un turno pequeño.

"Hon. Juez: Puede dividirse el tiempo. Queda hora y media. Se va a dividir tres cuartos de hora para la defensa y tres cuartos de hora para el fiscal. ¿Por qué no se ponen de acuerdo y la defensa informa primero y el fiscal cierra?

"Hon. Fiscal: Yo entiendo·que es conveniente.

"Hon. Juez: Puede presentar el caso y rectificar al mismo tiempo.

"Hon. Fiscal: Yo quería anunciar que hemos decidido no presentar prueba de *rebuttal*.

"Hon. Juez: *Eso lo había yo dado por descontado.*" (Bastardillas nuestras.)

Habiéndose fijado el límite de tiempo para los informes, tanto del fiscal como de la defensa, y no habiendo hecho el fiscal manifestación alguna de su deseo de presentar la anunciada prueba de *rebuttal*, el juez lógicamente tenía derecho a suponer que el ministerio público había desistido de esa idea. No concebimos cómo a la luz de semejantes circunstancias podía el jurado interpretar las anteriores manifestaciones del juez en la forma sugerida por el apelante. No se trata en este caso de comentarios del juez que tendían razonablemente a prejuiciar al jurado contra el acusado, privándole así de su derecho a un juicio justo e imparcial. *Pueblo* v. *Vázquez*, 75 D.P.R. 25; *Pueblo* v. *Díaz*, 74 D.P.R. 375, 394; *Pueblo* v. *Bartolomei*, 70 D.P.R. 698. Por otra parte, la defensa no formuló objeción alguna a las anteriores manifestaciones del juez y este Tribunal ha resuelto reiteradamente "que un acusado no debe permanecer callado cuando ocurre alguna anormalidad en el juicio que él considere perjudicial a sus derechos y esperar hasta la terminación del juicio para luego, en apelación, si el veredicto le es adverso, señalar esta anormalidad como un error." *Pueblo* v. *Cortés*, 69 D.P.R. 344, 349; *Pueblo* v. *Márquez*, 67 D.P.R. 326, 337; *Pueblo* v. *Emmanuelli*, 67 D.P.R. 667. Dadas las anteriores consideraciones, concluímos que las referidas manifestaciones del juez senten-

ciador no fueron perjudiciales en forma alguna para el acusado. Por tanto, no se cometió el primer error señalado.

Se queja el apelante en segundo lugar de que el tribunal inferior erró al resumir indebidamente la declaración de Manuel Ramírez de Choudéns, testigo principal de El Pueblo. Declaró este testigo en el examen directo que visitó a los acusados Lampón Sierra y Arrufat para ver si éstos le permitían continuar la construcción de una terraza, una marquesina y un garaje en la casa de Alfonso Pérez Matos en Puerto Nuevo, sin el permiso requerido por el Negociado; que Arrufat le dijo "este asunto está feo, pero dile al Sr. Pérez Matos que si él se pone con algún dinero yo le puedo . . . dejar hacer la obra sin el permiso." Al ser contrainterrogado por la defensa, sin embargo, el mismo testigo le atribuyó dichas manifestaciones al coacusado Lampón Sierra, incurriendo así en una aparente contradicción. Como parte de sus instrucciones al jurado el juez hizo un resumen de lo declarado por cada testigo y al referirse a la declaración de Ramírez de Choudéns mencionó que éste le atribuía las referidas manifestaciones al apelante Lampón Sierra, pero no mencionó el hecho de que Ramírez de Choudéns también le había atribuído las mismas manifestaciones a Arrufat. Desde luego, al instruir al jurado era el deber del juez sentenciador hacer un análisis de la prueba que había desfilado en el juicio. *Pueblo* v. *Rodríguez*, 69 D.P.R. 980; *Pueblo* v. *Valentín*, 63 D.P.R. 787; *Pueblo* v. *Cartagena*, 54 D.P.R. 870. La contención del apelante es que el juez al actuar en la forma en que lo hizo, es decir, al atribuir dichas palabras meramente a Lampón Sierra, dirimió la contradicción en que había incurrido el testigo Ramírez de Choudéns y al así actuar invadió las funciones del jurado y le privó de su derecho a un juicio justo e imparcial. No estamos de acuerdo. Es innegable que al hacer el análisis de la prueba el juez sentenciador cometió por inadvertencia el lapso atribuídole.(³) Pero esa inadvertencia no tiene el

_____

(³) Al hacer el análisis de la prueba el juez que preside una causa no viene obligado a repetir cuanto los testigos han dicho, bastando que el

efecto que le atribuye el apelante, y la misma no debe dar lugar a la revocación de la sentencia, especialmente si se toma en consideración que de acuerdo con lo declarado por Ramírez de Choudéns, al hacer él entrega a Arrufat del dinero que constituía el soborno, ambos acusados se hallaban presentes. El hecho de que en la primera ocasión mencionada uno u otro actuara como portavoz de ambos para solicitar el soborno, no altera la situación.

Por otra parte, de la transcripción de evidencia elevada no se desprende que el apelante en momento alguno formulara objeción al análisis de la prueba hecha por el tribunal de la declaración del testigo Ramírez de Choudéns, o que llamara la atención del tribunal hacia la omisión o inadvertencia que ahora señala como error. Naturalmente, cuando un juez por error incurre en omisiones o inadvertencias al hacer un resumen de la prueba que ha desfilado en el caso, el acusado viene obligado a llamar oportunamente su atención a tal omisión, para así salvaguardar sus derechos en apelación.

██ Nuestra jurisprudencia ha establecido que cuando un acusado no está conforme con las instrucciones dadas por el tribunal, debe anotarse excepciones específicas sobre aquéllas que entienda le son perjudiciales, dando así oportunidad al tribunal para que las corrija. De no hacerlo así, se entenderá que ha renunciado a cualquier error no fundamental en las instrucciones. *Pueblo* v. *Feliciano*, 70 D.P.R. 875; *Pueblo* v. *Muñiz*, 73 D.P.R. 312; *Pueblo* v. *Ortiz*, 68 D.P.R. 681; *Pueblo* v. *Márquez*, supra; *Pueblo* v. *Millán*, 66 D.P.R. 243; *Pueblo* v. *Valentín*, supra; *Pueblo* v. *Cartagena*, supra; *Pueblo* v. *Benítez*, 47 D.P.R. 78; *Pueblo* v. *Maldonado*, 45 D.P.R. 417. Por ende, el apelante no tiene derecho a que se considere la inadvertencia referida como fundamento para revocar la sentencia dictada en su contra. Además, instrucciones erróneas o deficientes que no perjudican derechos sustanciales del acusado, carecen de importancia y no dan lugar a la revocación. *Pueblo* v. *Lebrón*, 61 D.P.R. 657, 670.

resumen que haga sea razonablemente completo. *Pueblo* v. *Urbina*, 50 D.P.R. 884.

■ También sostiene el apelante que el tribunal a quo hizo imputaciones reprobables a los abogados de la defensa en presencia del jurado. Mientras se repreguntaba al testigo de cargo Alfonso Pérez Matos, tuvo lugar lo que pasamos a copiar en seguida:

"Hon. Juez: Tenga la bondad. Una pregunta que ha contestado el testigo, no ha podido ir al jurado. Taquígrafo, léala al jurado. No ocultemos lo que está hablando. Una pregunta que ha contestado el testigo no la han hecho ir al jurado.

"Lic. Juliá: Queremos tomar excepción de las manifestaciones del tribunal, porque entiendo que la defensa en ningún momento ha obstruído al testigo en su declaración y mucho menos ha actuado la defensa con intenciones de ocultarle nada de lo que el testigo ha declarado y queremos hacer constar además, que todo este incidente y las manifestaciones de la Corte, han sido en presencia del jurado.

"Hon. Juez: Haga constar en el récord que todo lo que dice el compañero es cierto, excepto que ambos abogados y especialmente el señor Marrero Ledesma, persistentemente a pesar de las medidas que tomó la Corte, se empeñó en seguir con el contrainterrogatorio del testigo a pesar de la orden de la Corte de que dejara al testigo hablar y que dejara al taquígrafo que repitiera la declaración, que fué ahogada por los gritos y las preguntas obstinadas para que no oyera el jurado esa declaración. Hágalo así constar en el récord claramente. Puede seguir con el contrainterrogatorio.

"Lic. Marrero Ledesma: ¿Me permite Vuestro Honor? Nosotros verdaderamente le pedimos perdón a Vuestro Honor si es que Vuestro Honor ha interpretado que este abogado ha querido faltarle al respeto.

"Hon. Juez: Yo no interpreto eso, compañero. Yo no he dicho que ninguno de los dos abogados me ha faltado al respeto. Lo que he dicho es que el jurado tiene derecho a oír la contestación del testigo y que ningún abogado debe continuar un contrainterrogatorio cuando el tribunal ordene al taquígrafo que lea la contestación y obstinadamente Su Señoría siguió preguntando al testigo, ahogando las palabras del testigo y del tribunal y por lo tanto, se hace constar eso en el récord porque se ha tomado una excepción, para que esté bien expresado. Continúe. Nadie le ha faltado al respeto a nadie. Los compañeros están defen-

diendo a sus defendidos con el calor que deben defenderlos, pero se han excedido porque no han oído las amonestaciones del tribunal y por lo tanto, el tribunal tiene la obligación de hacer que las palabras del testigo lleguen al jurado. Puede continuar."

La contención del apelante es que las imputaciones hechas por el juez a los abogados de la defensa crearon en el ánimo de los señores del jurado una impresión hostil hacia ambos acusados, que tuvo el efecto de privarlos de un juicio justo e imparcial. Tal contención es enteramente frívola y no merece seria consideración. *Cf. Pueblo* v. *Acevedo*, 35 D.P.R. 966. Las palabras dirigidas por el juez a los abogados de la defensa no fueron de tal naturaleza que pudieran causar perjuicio al acusado. El propósito primordial del juez, si no el único, fué que cuanto declaraba el testigo fuera oído por los señores del jurado. Manifestaciones de la corte que no lesionan derechos del acusado no dan lugar a la revocación. *Pueblo* v. *Vázquez*, supra.

█ Finalmente alega el apelante que el juez sentenciador erró al instruir al jurado que podían traer un veredicto "por mayoría o por unanimidad o de nueve contra tres." (⁴) Realmente, la instrucción es confusa y tal vez podía ser interpretada por el jurado en el sentido de que el veredicto podía ser el acuerdo de la mitad más una de las personas que constituían el jurado. Tal veredicto estaría en conflicto con lo dispuesto por el art. 185 del Código de Enjuiciamiento Criminal. (⁵) Sin embargo, semejante instrucción no constituye en este caso un error que amerite la revocación de la sentencia apelada, por las razones que pasamos a consignar en seguida. Inmediatamente después de leerse el veredicto del jurado el juez se dirigió al presidente de éste en la siguiente forma:

---

(⁴) Posteriormente el juez indicó al jurado que el veredicto podía ser "por mayoría o por unanimidad."

(⁵) El art. 185 del Código de Enjuiciamiento Criminal según fué enmendado por la Ley núm. 11 de 19 de agosto de 1948, (ses. extr., pág. 213), dice así:

"En todos los casos en que, conforme a las leyes de Puerto Rico, un jurado deba rendir un veredicto, dicho veredicto será por acuerdo de no menos de tres cuartas partes (¾) del jurado."

"Hon. Juez: ¿Ese es el veredicto de todos y cada uno de los señores del jurado o por mayoría? De nueve a tres o más de eso. Tiene que ser una mayoría de más de nueve o de nueve a favor del veredicto, ¿eso es así?

"Sr. Presidente: Sí, señor.

"P. Se declara ser formal y se declara a ambos acusados culpables del delito de soborno, *felony*, infracción al artículo 84 (sic) del Código Penal..." etc.

La forma clara en que el juez explicó a los señores del jurado que tenía que haber una mayoría de nueve o más en favor del veredicto y la contestación categórica dada por el presidente del jurado, no dejan lugar a dudas de que el jurado había entendido claramente que para que pudiera haber veredicto éste debía representar el acuerdo de por lo menos nueve de las doce personas que componían dicho cuerpo.[6] Sea ello como fuere, siendo el veredicto rendido por el número de jurados requerido por la ley, el acusado no se perjudicó en forma alguna.

*Debe confirmarse la sentencia apelada.*

---

[6] Nuestro criterio anterior queda confirmado al leer en la transcripción de evidencia que con anterioridad al momento en que se rindió el veredicto el jurado, después de estar deliberando por algún tiempo, pidió que se le trajera a la sala del tribunal y que, al así hacerse, el presidente del jurado manifestó "no llegamos a un acuerdo. Siete en la afirmativa . . ." Indicando inmediatamente el juez "no tiene que decir el número. No está obligado a decir cómo están." Esto demuestra sin lugar a dudas que el jurado entendía que el veredicto no podía ser por una mayoría de la mitad más uno, sino por una mayoría de por lo menos nueve contra tres.