EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* DAVID
LUIS PHILIP, acusado y apelante.

No. 2537.—*Visto:* Julio 20, 1925. *Resuelto:* Julio 31, 1925.

1. HOMICIDIO— EVIDENCIA— ADMISIBILIDAD EN GENERAL— DELITOS INTIMAMENTE
RELACIONADOS—CASO DE ASESINATO.—Si varios delitos están íntimamente rela-
cionados entre sí y prueba de uno de ellos no puede presentarse sin mos-
trarlos todos, la evidencia de uno o de todos es admisible contra el acusado
en un juicio por cualquiera de los delitos cometidos.

2. HOMICIDIO — EVIDENCIA — PESO Y SUFICIENCIA — HECHOS QUE JUSTIFICAN LA
EXISTENCIA DE DELIBERACIÓN Y PREMEDITACIÓN.—Atendidas las circunstancias
de este caso, *se resolvió:* que la manera como el acusado realizó los hechos
es suficiente para demostrar que existe la premeditación y deliberación.

SENTENCIA de *Pablo Berga,* J. (Humacao), condenando al acusado
a sufrir la pena capital por delito de asesinato en primer grado.
*Confirmada.*

*Borinquen Marrero Ríos,* abogado del acusado; *José E. Figueras,*
abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del
tribunal.

Un jurado declaró culpable al acusado David Luis Philip
de un delito de asesinato en primer grado y la corte inferior
dictó sentencia condenándole a sufrir la pena capital.

En su alegato sosteniendo el recurso, el apelante apunta
la comisión de los siguientes errores, a saber:

"1. Permitir que los testigos Benedicta López, Eva Mojica, Rosa
González y Gregorio García declararan sobre los delitos cometidos
por este acusado con posterioridad al de doña Canuta Zenón, ya que
por todos estos delitos estaba procesando a este acusado, y permi-
tir tales declaraciones era prejuzgar al acusado de dichos delitos
y porque tales declaraciones·influían en el ánimo del jurado en per-
juicio del acusado.

"2. Permitir a la testigo Eva Mojica desnudarse el hombro iz-
quierdo y mostrar al jurado las cicatrices de las heridas que le pro-
dujo este acusado, por ser ese un delito de mutilación por el cual se
estaba procesando a este acusado, distinto al que se estaba venti-
lando, y por influir esta demostración en el ánimo del jurado, tam-
bién en perjuicio del acusado.

"3. Denegar la moción de nuevo juicio."

Los motivos señalados en los dos primeros errores tienen un mismo fundamento, por lo que serán considerados con-juntamente.

[1] La corte inferior al negar la moción solicitando la celebración de un nuevo juicio y refiriéndose a los motivos de error alegados, resume la prueba en esta forma:

"Según resulta de la prueba, inmediatamente después de la agresión por el acusado a Canuta Zenón Dávila, y de arrastrar a ésta por los cabellos, acometió y agredió con la misma hoja de sable o espadín que portaba, a Eugenia Cáncel, una hija de Canuta; a un niño hijo de Eugenia; a Eva Mojica; a Felipa Neri Martínez, a quien dió muerte, y a Tomás Sánchez, esposo de Felipa, todo lo cual sucedió 'entre minutos,' según dice la testigo Benedicta López; y que entonces el acusado entró en su habitación, se puso la chaqueta, pues estaba en mangas de camisa, y salió, cerrando la puerta con un candado y en el camino encontró al policía Ramón Ortiz, a quien dijo que hacía tiempo que lo estaban molestando y que si encontraba al Catalán y a Treviño, los que no estaban en la casa, los hubiera matado también. De la prueba aparece que Catalán era el marido de Eugenia Cancel y Treviño otro de los vecinos del sitio."

Toda la evidencia tiende a demostrar, por consiguiente, que si bien el acusado realizó con el mismo instrumento y pocos instantes después además del hecho que se le imputa en la acusación, la muerte de otra persona y el haber herido a otras más, estos últimos hechos, aunque distintos al primero, todos ellos aparecen, sin embargo, tan íntimamente relacionados por razón del momento inmediato en que fueron cometidos por el acusado, que no pueden dejarse de considerar como un todo por pertenecer a la misma transacción o parte del *res gestae.* Esta cuestión fué claramente resuelta por esta Corte Suprema en el caso de *El Pueblo* v. *Souffront,* 30 D.P.R. 106, en cuyo caso este tribunal, por voz del Juez Presidente Sr. del Toro, dijo lo siguiente:

"2. El hecho concreto imputado al acusado consiste en haber acometido y agredido a Pedro A. Reinosa con el propósito de asesinarlo infiriéndole una herida de carácter grave en la región lumbar izquierda. Al declarar ciertos testigos refirieron que mientras tal

hecho ocurría, intervino otra persona en pro de Reinosa y entonces
el acusado hirió también a esa otra persona que murió a consecuen-
cia de las heridas.  El acusado por su abogado se opuso a que se per-
mitiera declarar sobre tales hechos y la corte desestimó su oposición,
tomando excepción el acusado a la regla de la corte.  Sin citar, si
no recordamos mal, ley o jurisprudencia aplicables, insistió el acu-
sado en el acto de la vista de este recurso en que la corte había
errado al proceder de tal modo.

"El hecho de herir a la otra persona era distinto, pero estaba
tan enlazado con el que se persigue en esta causa que bien pudiera
considerársele como parte de la *res gestae*.  Véase 22 C.J. 443, 454
y siguientes.  La otra persona intervino en favor de Reinosa.  Se-
gún el propio Reinosa cuando él gritó acudió la otra persona y dijo:
'No atropelles al anciano, al viejo Reinosa, y entonces parece ser que
le dió una estocada al otro, dice, "toma, tú que eres joven." ' Se
acusaba a Souffront de haber acometido y agredido con intención
de asesinar y era pertinente probar todas las circunstancias adecua-
das que rodearon el hecho a fin de poder penetrar con más seguri-
dad en el estado mental del acusado."

Igual doctrina está sostenida en parecidos términos en la
obra de Underhill on Criminal Evidence, página 157, pá-
rrafo 88, diciéndose así:

"Si varios delitos están relacionados o unidos entre sí, o enlaza-
dos de tal modo que forman una transacción criminal indivisible,
y no puede presentarse completa prueba testifical, ya sea directa o
circunstancial de cualquiera de ellos sin mostrar los otros, la evi-
dencia de uno o todos ellos es admisible contra un acusado en un
juicio por cualquier ofensa que es en sí un detalle de toda la tran-
sacción criminal."

[2] Aunque el tercer y último error que se refiere a ha-
ber negado la corte inferior la moción de un nuevo juicio
descansa en los puntos ya discutidos, se alega además que
no hubo deliberación, requisito esencial en el asesinato en
primer grado, y que, por tanto, el veredicto fué contrario
a las pruebas.

Volviendo sobre los hechos resulta de ellos que Canuta
Zenón Dávila, interfecta, salía una mañana temprano de su
cuarto, que era parte de una casa dividida en habitaciones

separadas para familias, con un cacharro en la mano y ca-
minaba por un callejón para salir a la calle en momentos
en que fué agredida por el acusado con una hoja de sable,
recibiendo tres heridas, dos de tres pulgadas cada una en la
parte posterior de la cabeza, en la región occipital, y la otra
en el frontal, que fracturaron el cráneo y penetraron en la
masa encefálica, falleciendo pocos días después a consecuen-
cia de dichas heridas.    El testigo Gregorio García, vió cuando
el acusado descargaba el arma sobre la mujer indefensa y
quiso huir pero el acusado la tenía agarrada y tan pronto
caía y trataba de levantarse "le daba y de nuevo iba al
suelo."    Eva Mojica declaró que "vió a Canuta bañada en
sangre y al acusado arrastrándola por el pelo, teniendo un
machete en la mano, en alto, y con la izquierda la empuñaba
por el pelo y la arrastraba."    Asimismo aparece de esas
declaraciones que no bien dejó el acusado a Canuta Zenón
fatalmente herida, fué entonces que acometió a otras perso-
nas que encontraba a su paso, matando a una y otras reci-
biendo graves heridas.    Ningún testigo dice en verdad cómo
se inició la agresión, pero si "para que exista el delito de
asesinato en primer grado basta, de acuerdo con nuestros
estatutos, entre otros casos, con que voluntaria, deliberada
y premeditadamente se haya causado una muerte ilegal,"
tales requisitos aparecen de los hechos y circunstancias con-
currentes en este caso.    *El Pueblo* v. *Ortiz et al.,* 18 D.P.R.
833.    En dicho caso se declaró además: "la deliberación y
premeditación dependen de las circunstancias del caso, y el
hecho de apuntar y disparar un arma de fuego contra una
persona y matarla, es bastante para que exista la premedi-
tación y deliberación, sin que obste a ello la rapidez con que
el acto se haya realizado."    Y en el caso de autos la ma-
nera como el acusado realizó los hechos es suficiente para
que exista la premeditación y deliberación toda vez que di-
cho acusado sin causa justificada y sin que se demostrara
provocación alguna por parte de la víctima, no sólo privó
ilegalmente de la vida a Canuta Zenón, sino que agredió a

otras personas que intervinieron o se encontraban a su paso en el acto de cometer el hecho de autos, causando a su vez la muerte de una de ellas, y porque además hay la circunstancia de que el propio acusado, al ser arrestado, manifestó que si hubiera encontrado a Catalán y Treviño, dos individuos más que eran sus vecinos, que también les hubiera matado. Todas las circunstancias fueron apreciadas por el jurado, quien parece que pudo penetrar en la intención y móvil del acusado al ejecutar el delito del cual fué propiamente convicto.

*Por todo lo expuesto deben confirmarse la resolución denegatoria de nuevo juicio de abril 9, 1925, y la sentencia de abril 13, 1925*