EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JENARO BERMÚDEZ LARRAURI, acusado y apelante.

No. 3702.—*Sometido:* Febrero 28, 1929. *Resuelto:* Junio 28, 1929.

*Manuel A. Martínez Dávila, A. Porrata Doria* y *Luis F. Camacho,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Jenaro Bermúdez Larrauri fué acusado por el fiscal como autor de un delito de asesinato en segundo grado. Hizo la alegación de no culpable y solicitó ser juzgado por jurado. Celebrado el juicio, el jurado rindió su veredicto declarando al acusado culpable de homicidio voluntario y la corte dictó sentencia imponiéndole cuatro años de presidio con trabajos forzados.

No conforme Bermúdez apeló para ante este tribunal señalando en su alegato la comisión de tres errores.

El primero se formula así:

"La Corte Inferior erró al ordenar la insaculación de un número adicional de jurados sin causa ni justificación, violando así lo dispuesto en el artículo 202 del Código de Enjuiciamiento Criminal."

Examinada la transcripción para cerciorarse de lo realmente ocurrido, basta para sostener que no existe el error

citar lo resuelto por esta Corte Suprema en el caso de *El Pueblo* v. *Juliá,* 25 D.P.R. 258, a saber:

"El hecho de que el juez ordene que se sortee un nuevo panel de veinte y cuatro jurados y los combine con otros jurados regulares sorteados primeramente por resultar que varios de éstos fueron recusados por haber tomado parte en una causa semejante, de manera que había más de treinta jurados constituidos, no es una infracción del artículo 199 del Código de Enjuiciamiento Criminal que limita el número de jurados a veinte y cuatro, pues de acuerdo con el artículo 202 del mismo código el juez tiene amplia discreción sobre el particular. La jurisprudencia demuestra que un mayor número de jurados no perjudica al acusado, que los estatutos semejantes son meramente directorios, y que no se revocará la sentencia, a no ser que haya abuso o perjuicio."

Por el tercer error se sostiene que el veredicto es contrario a la prueba.

Hemos examinado la evidencia aportada por ambas partes y aunque confusa en muchos extremos, es a nuestro juicio suficiente. De no haberse cometido el segundo error señalado, debería confirmarse la sentencia apelada.

En su alegato el fiscal que fué de esta Corte Suprema, Sr. Figueras, admite que ese segundo error fué cometido y admite además que es de tal naturaleza que lleva consigo la revocación de la sentencia recurrida. Se establece así:

La Corte inferior erró al no permitir que la defensa repreguntara al testigo Miguel Bermúdez sobre sus relaciones económicas con el acusado a fin de determinar los móviles o interés de su declaración."

De los autos consta que declarando el testigo Miguel Bermúdez, hijo del acusado con quien éste tuvo un disgusto y contra quien hizo los disparos que ocasionaron la muerte de otra persona, Ramón Rodríguez, que allí se encontraba, intervino un jurado, así:

"Jurado.—Me permite la Corte una pregunta.—P.—¿Con anterioridad a esos hechos, cuáles eran las relaciones entre usted y su padre, eran relaciones cordiales, había ocurrido anteriormente a es-

tos hechos algún incidente que hubiese roto las relaciones entre usted y su papá?—R.—Ninguno.''

Por medio de sus repreguntas al testigo el abogado defensor trató entonces de establecer el hecho de la animosidad existente entre el testigo y su padre, el acusado. El fiscal se opuso y la corte ordenó que se eliminaran todas las respuestas del testigo en relación con el asunto.

Insistió otra vez la defensa y el récord muestra que ocurrió lo que sigue:

''Juez.—La Corte resolviendo el incidente sostiene que habiendo el testigo ya manifestado que sus relaciones con su padre, que es el acusado en este caso, eran cordiales, esas manifestaciones del testigo no pueden ser contradichas con prueba que tienda a demostrar actos reprobables del testigo, a menos que estos actos reprobables del testigo se refieran a delitos grave, felonies, o convicciones por delitos graves, por lo que la Corte sostiene que no son admisibles en evidencia las preguntas que hizo la defensa sobre determinados hechos delictivos cometidos por el testigo, no obstante la Corte no tiene inconveniente en permitir que se pregunte al testigo sobre cualquier convicción por delitos graves para impugnar su veracidad en cuanto a sus relaciones con su padre como por ejemplo de haber sido convicto por falsificación.—Defensor.—Nosotros no le hemos preguntado si ha sido convicto, nosotros lo que le hemos preguntado al testigo es, la base de nuestra pregunta es si es o no cierto si él ha sido denunciado, sin saber el resultado que ha corrido, por su padre, para demostrar que no existen buenas relaciones, . . . —Juez. —¿Cuál es entonces el fin?—Defensor.—Por eso es que yo quiero hacer las preguntas, que las vaya impugnando el Fiscal, que la Corte las deniegue, y yo tome excepción nada más, y que quede en el récord.—El testigo que no conteste hasta que el Juez no resuelva la pregunta, primero siento como base que voy a hacer las siguientes preguntas para sentar las bases de impugnación de este testigo demostrando que al afirmar ante el jurado que no ocurrió ningún incidente con su padre que rompiera sus relaciones ha mentido.—P.—¿Es o no cierto, que Ud. fué denunciado ante la Corte por su padre por un documento que según él le había falsificado?—R.—No señor.— P.—¿No es cierto?—Fiscal.—El Fiscal se opone.—Juez.—Con lugar la objeción.—Defensor.—Tomamos excepción porque tratamos de impugnar la veracidad de este testigo y el único fundamento es hacer la pregunta para que él la niegue o acepte.—P.—¿Es o no cierto que

en otra ocasión fué denunciado Ud. por un café que Ud. le cogió de la finca?—Fiscal.—El Fiscal se opone.—Juez.—La Corte sostiene la oposición.—Defensor.—Nosotros tomamos excepción por los mismos fundamentos anteriores.—P.—¿Es o no cierto que Ud. fué denunciado por haberlo amenazado con un machete a él y a las personas que estaban' allí?—Fiscal.—El Fiscal se opone.—Juez.—Sostenida la oposición.—Defensor.—Nosotros tomamos excepción.''

En su tratado sobre ''Criminal Evidence,'' pág. 405, párrafo 222, dice Underhill:

''Los sentimientos, prejuicios y relaciones del testigo nunca son cuestiones colaterales. En el examen de repreguntas puede interrogarse a un testigo respecto a su interés o prejuicio, es decir, siempre que el único objeto de la pregunta sea aclarar las relaciones, sentimiento o conducta del testigo, tanto en la actualidad como en el pasado, hacia el delito, hacia el acusado o hacia los perjudicados.

''A un testigo se le puede preguntar generalmente si no ha expresado, o quizás tenido sentimientos de hostilidad o si ha actuado en forma poco amistosa para con el acusado, o si ha tenido algún disgusto con él. Por ejemplo, a un testigo de cargo se le puede preguntar si no ha hecho que el acusado fuese arrestado anteriormente, si no ha reñido con el acusado o si no ha utilizado los servicios de un abogado para ayudar al fiscal en la causa que está pendiente. Al testigo debe permitírsele explicar los motivos que ha tenido para utilizar los servicios de un letrado.

''Si el testigo se negara a contestar las preguntas que se le hacen sobre tales cuestiones, o contestara negativamente, puede demostrarse lo contrario con la declaración de otras personas. Pero cuando el testigo declara que aunque una vez era hostil para con el acusado, ya no lo es, evidencia de su hostilidad anterior, por ser demasiado remota, es impertinente.

''En la repregunta de un testigo de cargo, muy bien puede demostrarse que viene desde muy lejos sin haberse expedido un *subpœna* y que los gastos de ferrocarril han sido pagados por el denunciante. La regla general es que cuando un testigo demuestra en el examen directo que odia al acusado o cuando el testigo ha sido muy activo en la consecución de prueba contra el acusado debe permitirse a este último la más amplia latitud en el examen de repreguntas.''

Y en el caso de *El Pueblo* v. *Alvarado*, 35 D.P.R. 281, 282,

en que fué revocada la sentencia, esta propia corte por medio del Juez Asociado Sr. Hutchison, se expresó así:

"El Artículo 21 de la Ley de Evidencia es como sigue:

" 'Se presume que un testigo dice la verdad. Esta presunción, sin embargo, puede ser rechazada, por la forma en que declare, por el carácter de su declaración o por evidencia que afecte su veracidad, honradez, integridad, o móviles, o por evidencia contradictoria.'

"Parece que Nieves se refirió a una riña anterior. Al aludir al acusado dijo 'volvió a buscarme la garata.' Los demás actos imputados al acusado por este testigo y referidos en el interrogatorio directo también parecen indicar algún incidente previo como explicación lógica y probable, si no la única, de lo que de otro modo parecería ser una conducta muy sorprendente y anormal. Por tanto, la primera pregunta hecha en el interrogatorio de repreguntas, hubiera sido enteramente pertinente por estar dentro del alcance del interrogatorio directo, sin tener en cuenta el elemento de parcialidad y el derecho del acusado a impugnar al testigo en la forma ordinaria si no en verdad por el único medio permisible.

"Según el peso de las autoridades, el juez sentenciador tiene cierta discreción respecto a la cuestión de limitar tal interrogatorio de repreguntas y creemos que debe circunscribirlo a límites razonables. Pero no conocemos ningún caso en que se llegue a decir que el acusado en un caso criminal puede ser privado de toda oportunidad de demostrar la existencia de algún motivo de apasionamiento o parcialidad por parte del perjudicado."

La pregunta que no se permitió contestar al testigo Nieves en el caso de Alvarado, *supra,* fué "¿Usted era amigo de este hombre (el acusado) o había tenido alguna riña con él?", y a dicho caso refiriéndose dijo el Fiscal del Supremo en su alegato:

"Como verá este Hon. Tribunal, en el caso que hemos citado se trata de un misdemeanor, y, por tanto, dicha jurisprudencia nos parece todavía más fuerte para el caso que nos ocupa ya que en éste se trata de un felony ante un jurado y si en el caso de Alvarado, supra, resolvió este Tribunal que era error no haberse permitido al acusado hacer la pregunta para demostrar la condición de ánimo del testigo en contra del acusado, nos parece que en el presente en donde un jurado había de decidir lo mismo, con más razón se puede aplicar dicha jurisprudencia que, a nuestro juicio, es ter-

minante y resuelve la cuestión de manera que no deja lugar a dudas, más aun, cuando toda la prueba en este caso demuestra que había ciertas relaciones de animosidad entre el acusado-apelante y su hijo, el testigo, y que debido a estas circunstancias surgió el incidente que motivó la muerte de Ramón Rodríguez.''

Estamos conformes, y en tal virtud, habiéndose cometido durante la práctica de la evidencia un error que puede ser perjudicial al acusado, *debe revocarse la sentencia apelada y ordenarse la celebración de un nuevo juicio.*