El Pueblo de Puerto Rico, demandante y apelado, *v.* Emilio Valentín, acusado y apelante.

Núm. 10504.—*Sometido:* Junio 2, 1944. *Resuelto:* Junio 8, 1944.

*Ubaldo Aponte*, abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El apelante fué acusado ante la Corte de Distrito de Guayama de un delito de asesinato en primer grado, consistente en haber dado muerte al individuo Gregorio de Jesús, hecho ocurrido el día 13 de noviembre de 1932. La acusación le fué leída al acusado el 9 de diciembre de 1932. Después de haberse celebrado dos juicios sin que el jurado rindiera un veredicto, en abril 24 de 1935 el fiscal solicitó el traslado de la causa al distrito judicial de Ponce. En agosto 1ro. de 1935 se decretó el traslado solicitado y en mayo 12 de 1937 comenzó por fin la vista del caso ante la Corte de Distrito de Ponce. El día 14 de mayo de 1937, el jurado declaró al acusado culpable de homicidio voluntario y el 7 de septiembre de 1937 la corte dictó sentencia condenándole a la pena de tres años de presidio. En la misma fecha en que fué sentenciado, el acusado apeló. La transcripción de evidencia fué certificada por el taquígrafo el 13 de abril de 1944 o sea seis años y siete meses después de haberse radicado el escrito de apelación, sin que de los autos ante nos aparezca que el fiscal del distrito o el Departamento de Justicia hiciera gestión alguna para obligar al taquígrafo a cumplir con su deber de transcribir las notas taquigráficas dentro de un término razonable y evitar estas dilaciones tan innecesarias como inexcusables, que sólo sirven para desacreditar la administración de justicia. Después de haber transcurrido cerca de cinco años, desde la comisión del delito hasta la fecha de la sentencia, y de haber dormido tranquilamente en las libretas del taquígrafo cerca de siete años más, llega por fin este caso a esta Corte Suprema cuando está próximo a cumplirse el duodécimo aniversario del día en que un ser humano fué ilegalmente privado de su vida.

Para sostener su recurso, el acusado imputa a la corte sentenciadora la comisión de seis errores. Los discutiremos en el mismo orden en que han sido señalados.

█ Que la corte erró al no eliminar totalmente la declaración del testigo Margaro de Jesús, permitiendo que quedara en el récord aquella parte de su declaración en que dijo que al pasar por donde estaba el acusado éste sacó un revólver.

El incidente, base de este señalamiento, ocurrió así: Habiendo anunciado el fiscal que iba a renunciar a la declaración de Margaro de Jesús, por ser evidencia acumulativa, insistió la defensa en que el fiscal estaba obligado a presentar todos los testigos mencionados en la acusación, y que si renunciaba a la declaración del mencionado testigo el acusado tenía derecho a que se instruyera al jurado que esa declaración voluntariamente suprimida debía ser considerada como adversa al fiscal. Entonces el fiscal presentó al testigo y éste declaró: Que el día de autos, como entre ocho y nueve de la noche, él, Justino Díaz y Julio Díaz venían de un baile familiar en casa de Jenaro Colón, y al pasar frente a la casa de Juan Bautista Rivera vieron allí al acusado parado en la escalera y al pasar ellos el acusado se les fué detrás. Al llegar frente a la casa del acusado, éste les dijo que si eran liberales se ensuciaba en las madres de los tres, sacando al mismo tiempo un revólver y diciéndoles: "Apeche el que quiera". El revólver era blanco, niquelado.

Solicitó la defensa la eliminación de toda la declaración. La corte inferior ordenó la eliminación de todo lo referente a las palabras y amenazas proferidas por el acusado, pero la denegó en cuanto al hecho de que el acusado en la misma noche del suceso y poco antes del encuentro con su víctima tenía en sus manos un revólver, la descripción del cual correspondía con la que ya había dado el testigo que declaró antes que Margaro de Jesús. No erró la corte inferior al denegar la eliminación de esa parte de la declaración. Ella

era admisible como corroboración del hecho de que el acusado, poco antes de la comisión del delito que se le imputa, andaba armado de un revólver, que es el arma que se alega en la acusación fué la empleada por el acusado para dar muerte a su víctima. Además, si algún error se hubiese cometido, en nada se perjudicó al acusado, toda vez que éste admitió haber dado muerte a su víctima, con un tiro de revólver, alegando que se había visto obligado a matarlo en defensa de su propia vida.

■ Que el veredicto rendido y la sentencia impuesta son contrarios a la evidencia y a la ley.

Hemos estudiado detenidamente la evidencia presentada por ambas partes. La de cargo, a la cual dió crédito el jurado, tendió a demostrar que en el momento en que el interfecto, acompañado de un amigo, pasó por el sitio donde estaba el acusado, éste, sin que mediaran palabras o discusión entre él y su víctima, dirigiéndose a Gregorio de Jesús le dijo: "Hombre, Goyito, parece mentira que usted, un hombre que era tan buen socialista, que haya votado con los Liberales. Usted no es más que un sinvergüenza y un hijo de la gran puta", y acto seguido le hizo un disparo de revólver. La bala le perforó el intestino y la vejiga y al día siguiente falleció. La explicación dada por el acusado inmediatamente después del suceso fué la de que "el señor Goyo de Jesús me invitó a pelear y al llegar al sitio me empujó, caí para atrás, se me salió un tiro y le cogí una pierna". Nada dijo el acusado en ese momento sobre que el interfecto hubiese tratado de agredirle con una navaja barbera y que por ese motivo él se había visto obligado a dispararle.

La prueba de la defensa tendió a probar que fué el interfecto quien desafió e insultó al acusado, abalanzándose contra él y metiéndose la mano en el bolsillo de atrás; que en ese momento sonó un tiro, pero ninguno de los testigos de defensa vió el arma ni supo quien fué la persona que hizo el disparo; que poco después del suceso, el herido le dijo al

testigo Julio Ramos: "Julio, sácame eso que tengo en el bolsillo", y entonces Ramos metió la mano en el bolsillo del herido y encontró la navaja, la cual entregó a la cuñada del acusado. Esa navaja no fué entregada a la policía y nada se supo de ella hasta que fué presentada en el acto del juicio.

Como prueba de "rebuttal" el fiscal ofreció la declaración del policía que llegó al sitio donde estaba el herido, inmediatamente después del suceso. Declaró que cuando él llegó al sitio, el testigo Ramos no estaba allí; que más tarde, cuando él mandó buscar a algunos vecinos para trasladar al herido, fué que se presentó Ramos; y que cuando Ramos llegó, ya él, el policía, había registrado al herido y no le encontró arma alguna.

La prueba de cargo es a nuestro juicio suficiente para sostener un veredicto de asesinato. No puede quejarse el acusado de que el jurado resolviese el conflicto de la evidencia en su contra, pero dándole el beneficio de una calificación de homicidio.

Al declarar como testigo de "rebuttal" el policía Sergio Díaz Cartagena, el fiscal le preguntó si el acusado se le quejó en algún momento de que Gregorio de Jesús lo amenazaba de muerte. Se opuso la defensa por no ser eso prueba de rebuttal. El testigo contestó con una negativa y la defensa tomó excepción.

No erró la corte inferior al permitir la pregunta. La prueba de la defensa tendió á demostrar que el interfecto había amenazado de muerte al acusado. Parece natural que un ciudadano que se ve amenazado de muerte acuda a la policía en busca de protección. El hecho de que el acusado no tomara esas precauciones tiende a demostrar que tales amenazas no fueron hechas.

Tampoco erró la corte sentenciadora al decir al jurado que la navaja se admitía en evidencia en relación con la declaración del testigo Julio Ramos y sujeta a la credibilidad del testigo. La declaración de dicho testigo no merecía en

verdad crédito alguno. Declaró que cuando ocurrió el suceso él estaba en su casa durmiendo. No oyó el disparo. Fueron a buscarle y entonces fué a donde estaba el herido. Cuando llegó allí el policía no había llegado aún. No recuerda cómo estaba el herido. Éste se quejaba, pero no sabe de qué se quejaba, pues él ni se fijó ni se preocupó. Lo único que recuerda es lo referente al hallazgo de la navaja en el bolsillo del herido. No recuerda cómo estaba vestido el herido ni tampoco si sus ropas estaban o no manchadas de sangre. Es natural que si el jurado no creía nada de lo declarado por Ramos tampoco debía creer lo declarado por él en cuanto al hallazgo de la navaja.

██ En este señalamiento se alega que la corte inferior erró al negarse a trasmitir al jurado la siguiente instrucción solicitada por la defensa:

"Cuando una persona se presenta ante otra, la provoca e insulta de palabras, la desafía, la agrede, no obstante el hecho de que ésta trataba de evitar la cuestión, trata luego de llegar, y llega, en actitud violenta al sitio en que estaba el agredido, asiéndole por el pelo con una mano mientras con la otra trata de sacar algo de un bolsillo, tales circunstancias son bastantes para hacerle creer a éste que estaba en peligro de ser acometido gravemente o de perder la vida, aunque no supiera si el agresor tenía o no arma consigo, y para justificar la muerte de su agresor."

Del récord no aparece que la defensa tomara excepción a la negativa de la corte. Aparece por el contrario, que al terminar de dar sus instrucciones la corte dijo a la defensa que si deseaba tomar alguna excepción podía hacerlo en presencia del jurado, contestando el abogado defensor que no deseaba tomar excepción. Esto debería ser suficiente para que desestimáramos este señalamiento. Empero, después de considerar cuidadosamente la cuestión levantada por el apelante hemos llegado a la conclusión de que la misma carece de méritos. La corte inferior no estaba obligada a dar la instrucción sobre defensa propia en la forma propuesta por

la defensa. Las instrucciones dadas por la corte al jurado cubrieron ampliamente la materia sobre defensa propia y se ajustaron a la ley tanto en su forma como en su fondo. *Pueblo* v. *Santiago,* 56 D.P.R. 109; *Pueblo* v. *Dones,* 56 D.P.R. 211; *Pueblo* v. *Guzmán,* 61 D.P.R. 634.

 Se queja el apelante de que la corte inferior al dar sus instrucciones al jurado no hiciera un resumen de toda la prueba presentada.

Es cierto que la corte está obligada a hacer un resumen de la evidencia, según se ha resuelto en los casos de *Pueblo* v. *Cartagena,* 54 D.P.R. 870 y *Pueblo* v. *Lebrón,* 61 D.P.R. 657; pero cuando la corte, por inadvertencia o por alguna otra razón deja de hacerlo, es al acusado a quien corresponde solicitar de la corte que así lo haga. Si el acusado, como ocurrió en el presente caso, renuncia ese derecho al hacer constar expresamente que no tiene objeción alguna a las instrucciones, no tiene motivo alguno para quejarse. Además, no estamos convencidos de que el acusado haya sufrido perjuicio alguno.

*La sentencia recurrida debe ser confirmada.*