El Pueblo de Puerto Rico, demandante y apelado, *v.* José Nicolás Millán, acusado y apelante. El Mismo *v.* El Mismo. El Mismo *v.* El Mismo.

Núms. 10894, 10895 y 10896.—*Sometidos:* Junio 6, 1945. *Resueltos:* Junio 7, 1946.

R. *Rivera Zayas, G. Rivera Cestero y E. Buitrago,* abogados del apelante; *Hon. Procurador General E. Campos Del Toro,* (*R. A. Gómez, Fiscal del Tribunal Supremo, y Luis Negrón Fernández, Fiscal Auxiliar,* en el alegato), abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El fiscal del distrito de Humacao formuló acusación contra el apelante, imputándole la comisión de un delito de asesinato en la persona de José María Roig. En otras dos acusaciones separadas se le imputaron los delitos de portación ilegal de la pistola con la cual dió muerte a Roig y no haber registrado dicha arma de acuerdo con lo dispuesto por la Ley núm. 14 de 1936 ((2) pág. 129).

Habiendo sido declarado culpable de los delitos de homicidio voluntario, portar un arma prohibida y no haberla registrado, casos que fueron sometidos conjuntamente por la misma prueba, el acusado apeló de las tres sentencias que le fueron impuestas. El apelante imputa a la corte sentenciadora la comisión de 19 errores, los cuales examinaremos y resolveremos en el mismo orden en que aparecen expuestos en el alegato.

El primer señalamiento se refiere a la admisión de la declaración del perito médico sobre las heridas sufridas por el individuo Carmelo Ortiz Cay, que no es la persona que fué víctima del asesinato imputado al apelante. Alega éste que dicha prueba no era necesaria ni pertinente a la resolución del caso y que fué ofrecida con el solo propósito de levantar prejuicio contra el acusado en el ánimo del jurado, perjudicando así sus derechos substanciales.

Al preguntarle el fiscal si había hecho un examen del cuerpo de Carmelo Ortiz Cay, se opuso la defensa, alegando que el caso que se estaba viendo era el de la muerte de Roig

y no el de las heridas inferidas a Ortiz. Replicó el fiscal que las heridas de Ortiz eran "parte de la misma transacción", o sea, que Ortiz había sido herido durante la ocurrencia del suceso en el cual Roig perdió la vida. Manifestó la defensa que no tenía objeción a que se declarase que otra persona había salido herida, pero sí se oponía a la presentación de la prueba pericial en cuanto al carácter de las heridas. La corte admitió la declaración sujeta a la condición de que se conectara en alguna forma con los hechos del caso de autos. La defensa anotó su excepción y entonces el testigo declaró en cuanto al carácter, situación, trayectoria e importancia de las dos heridas recibidas por Carmelo Ortiz.

En el segundo y tercer señalamientos se levanta la misma cuestión que en el primero. La corte, con oposición de la defensa, permitió que el médico declarase sobre la autopsia por él practicada en el cadáver de Antonio Torres Ortiz— persona distinta a la del occiso en el caso de asesinato—y que describiese las heridas recibidas en el mismo suceso por Florentino Ortiz.

Habiendo sido heridos Carmelo Ortiz y Florentino Ortiz y muerto Antonio Torres Ortiz, en el mismo acto o suceso en el cual se cometiera el alegado asesinato de José María Roig, la prueba de esos hechos era admisible como partes de una misma transacción. Sería en verdad imposible relatar los hechos en cuanto a la muerte de Roig, sin hacer referencia al hecho de que otra persona fué muerta y otras dos heridas, en el mismo sitio, por la misma persona y usando la misma arma. Véanse: *Pueblo* v. *Souffront*, 30 D.P.R. 105; *Pueblo* v. *Philip*, 34 D.P.R. 644; *Pueblo* v. *Sierra*, 42 D.P.R. 504 y *Pueblo* v. *Pierantoni*, 60 D.P.R. 13. La evidencia en cuanto al carácter y trayectoria de las heridas no era pertinente ni admisible. Empero, no aparece que el error de haberla admitido haya podido causar perjuicio alguno al acusado, ni que sea motivo suficiente para justificar la revocación que se solicita.

■■ La corte inferior admitió en evidencia una declaración manuscrita, prestada por el acusado mientras estaba preso en la Cárcel de Humacao, ante el Teniente Donnelly, Juez de Investigación de la Policía Militar del Ejército de los Estados Unidos; y en relación con dicha declaración admitió el testimonio de dicho oficial, quien no conoce el idioma español. Se imputa a la corte el error de haber admitido la declaración del acusado, sin que la misma hubiera sido debidamente identificada, ni constituyera una confesión o admisión voluntaria incriminatoria del acusado.

De la transcripción de la evidencia aparece que el Teniente Donnelly, encargado de investigar la causa de la muerte de Roig, quien era un soldado en servicio activo, fué a visitar al acusado llevando como su amanuense e intérprete al soldado Raúl Trujillo Santiago, quien conoce perfectamente el español y el inglés. Declaró el teniente Donnelly, que al encontrarse con el acusado Millán informó a éste cuál era su posición en el ejército y que estaba investigando la muerte del soldado Roig, que antes de interrogar al acusado le advirtió de su derecho a no declarar, informándole que su silencio no sería utilizado en su contra, pero que "si hablaba y cualquier cosa que dijese fuese incriminatoria contra él, podría ser usada en su contra"; que entonces el acusado, por medio del intérprete relató todas sus actuaciones, alegando que era la verdad y que estaba dispuesto a jurar esos hechos; que acto seguido el intérprete Trujillo tomó la declaración del acusado, preguntando a éste al terminar cada oración si era correcto o no; que las únicas tres cosas que resultaron incorrectas fueron tachadas poniendo el acusado sus iniciales, y cuando toda la declaración fué terminada la entregó al acusado para que la leyera y el acusado la leyó cuidadosamente página por página, la encontró conforme, prestó juramento y firmó; y que antes de que el acusado firmara le advirtió una vez más de sus derechos.

Opinamos que la declaración del acusado, admitida en evidencia, fué suficientemente identificada por el oficial que la autorizó con su firma, quien reconoció la firma del acusado y las de los demás firmantes del documento, como puestas en su presencia. La declaración fué prestada voluntariamente por el acusado, después de haber sido debidamente advertido de su derecho a no declarar. Todas las páginas de la declaración aparecen firmadas por el acusado. El último párrafo de la declaración dice así: "Quiero decir que se me ha advertido de mi derecho constitucional a no declarar, y que presto esta declaración voluntariamente con el objeto de cooperar con el Ejército en su esfuerzo de esclarecer la verdad."

■■ La declaración prestada por el acusado no es en realidad una confesión ni una admisión de culpabilidad. Por el contrario, el acusado declaró que él se encontraba en su establecimiento, echando fuera a los curiosos que allí se habían reunido, cuando oyó los "disparos que provenían de la Calle Muñoz Rivera". Su declaración no es otra cosa que lo que se conoce como un *exculpatory statement*, mediante el cual una persona trata de protegerse declarando que no tuvo participación alguna en el hecho delictivo que se investiga. La declaración era admisible sin que estuviese la Corte obligada a instruir al jurado que las manifestaciones del acusado debieran ser consideradas como ciertas hasta que fueran destruídas. Recientemente sugerimos y ahora así lo resolvemos que el *dictum* en contrario en *Pueblo* v. *Mercedes Sánchez Parra*, 55 D.P.R. 351, 369, fué erróneo y que "en una confesión la materia exculpatoria debe ser tratada como cualquier otra evidencia, estando el jurado en libertad de creerla o rechazarla." *Pueblo* v. *Muñiz* 65 D.P.R. 985.

■ Se queja el apelante de que no se le permitiera preguntar al testigo de cargo Carmelo Ortiz Cay, si tenía pendientes ante la Corte de Distrito de Humacao, acusaciones por delitos graves que surgían de los mismos hechos en-

vueltos en el presente caso, y por otros delitos cometidos con posterioridad. El objeto de dichas preguntas era, según se alega, poner de manifiesto el prejuicio, la parcialidad, el interés y la depravación moral del testigo.

El testigo, repreguntado por la defensa, declaró que él y el acusado eran amigos, del mismo pueblo y nunca habían tenido disgustos. Fué entonces que el abogado defensor le preguntó si tenía algún proceso pendiente con motivo del mismo suceso. Objetada la pregunta, la corte sostuvo la objeción del fiscal. La defensa preguntó entonces al testigo si había sido convicto de algún delito grave y el testigo contestó en la negativa.

El interrogatorio, a nuestro entender, era admisible con el propósito de establecer el interés que pudiera tener el testigo en declarar en la forma en que lo hizo. Este Tribunal, en el caso de *Pueblo* v. *Ramírez de Arellano*, 25 D.P.R. 263, 283, sentó la regla de que no es permisible preguntar a un testigo si se había iniciado una causa contra él; y que hasta tanto una persona no haya sido declarada culpable, existe la presunción de inocencia a su favor y el hecho relativo a un proceso criminal no tiende a desacreditarlo. Esa doctrina no ha sido revocada por la decisión dictada en el caso de *Pueblo* v. *Bermúdez*, 39 D.P.R. 826, pues existe una gran diferencia en el interrogatorio formulado en uno y otro caso. El interrogatorio en el caso de Bermúdez tendía a establecer un hecho específico ejecutado personalmente por el acusado Jenaro Bermúdez en contra del testigo de cargo, o sea que dicho acusado lo había denunciado en varias ocasiones por la comisión de unos cuantos delitos. En otras palabras, se interrogaba al testigo sobre hechos perjudiciales a él, realizados por el acusado, los cuales pensando lógicamente, tendían a demostrar la existencia de un motivo de apasionamiento o parcialidad por parte del testigo. La defensa en el presente caso se concretó a repreguntar al testigo Carmelo Ortiz Cay si es cierto o no que está procesado con motivo

del suceso que diera lugar a la acusación de Millán, o de otros acaecidos posteriormente.

La doctrina sentada en *Pueblo* v. *Ramírez de Arellano,* supra, es que el interrogatorio tendiente a demostrar que el testigo está sujeto a un proceso criminal no es admisible en evidencia. La del caso de *Pueblo* v. *Bermúdez,* supra, es que se puede interrogar al testigo si ha sido denunciado por el acusado por la comisión de algún delito, con el propósito de establecer la existencia de un estado de antagonismo entre el testigo y el acusado, que sirva de base para impugnar la declaración de dicho testigo. La corte inferior debió permitir la pregunta hecha al testigo en este caso, pero no apareciendo que su exclusión causara perjuicio alguno a los derechos del acusado, el error cometido no justifica la revocación solicitada.

Se queja el apelante de que la corte *a quo* no permitió repreguntas a los testigos de cargo Antonio López y Carmelo Ortiz Cay y preguntas al testigo de la defensa; el policía Vizcarrondo, tendentes a demostrar que horas antes de la muerte de Roig, éste estaba en estado de embriaguez así como sus compañeros Antonio Torres Ortiz y Carmelo Ortiz Cay, y quienes observaban una actitud agresiva y peligrosa para las personas y la propiedad.

Del récord de este caso no aparece que el acusado tomara excepción de la resolución de la corte denegando la admisión de las repreguntas formuladas sobre el particular cuando se interrogaba al testigo Antonio López. Ha sido doctrina constante de este Tribunal la de que resolución no excepcionada es resolución aceptada, no pudiendo, por tanto, ser motivo de revisión a menos que constituya un error tan fundamental, lo que no sucede en este caso, que malogre los fines de la justicia.

En cuanto a la declaración del testigo de la defensa, el policía Vizcarrondo, aparece de la transcripción de la evidencia que la corte inferior no permitió al testigo declarar

sobre dificultades anteriores habidas entre él y Roig y sus acompañantes. La corte sentenciadora puede negarse a permitir que un testigo declare sobre hechos que en nada afectan el delito cometido. Las dificultades habidas entre el interfecto José María Roig y sus compañeros con el policía Vizcarrondo en momentos y sitio distintos a los del suceso de autos, en nada pudieron afectar el delito que se imputa al acusado. Lo que motivó la acción del acusado en este caso, según su teoría, no fueron las dificultades anteriores, si algunas hubieron, entre el policía Vizcarrondo y Roig y sus amigos. Lo que surge de la teoría de la defensa es que el acusado Millán dió muerte a Roig porque vió en peligro la vida del policía Vizcarrondo, sin tener en consideración las dificultades a que se ha hecho mérito. Cuestión similar a la presente fué resuelta por este Tribunal en los casos de *Pueblo* v. *Sarria,* 57 D.P.R. 882, 890; *Pueblo* v. *Garay,* 64 D.P.R. 106, 108.

Se queja el apelante que la corte inferior erró al admitir, a pesar de la reiterada oposición del acusado, las preguntas formuladas por el fiscal al policía Vizcarrondo con el objeto de impugnar su veracidad, tomando como base una declaración escrita tomada por el propio fiscal en la investigación preliminar a pretexto de refrescar la memoria del testigo, rehusando exhibir o mostrársela al testigo y a la defensa, antes de proceder a formular dichas preguntas.

Un examen del récord de este caso demuestra que no se cometió el error alegado, pues aparece que el fiscal al tratar de impugnar la veracidad del testigo, al decir éste que la única pregunta que el fiscal le había formulado en la investigación del caso era si creía que el acusado Millán había matado a Roig innecesariamente, le presentó su declaración al testigo, y además la entregó para su lectura al abogado defensor. Rectificada su afirmación por el testigo al declarar que había sido objeto de varias preguntas más, el fiscal dió por terminada por creerla innecesaria la impugnación del

testigo. Luego al interrogar nuevamente el fiscal al testigo si al declarar ante él bajo juramento le había leído dos declaraciones juradas que anteriormente hubiera prestado ante otras autoridades, la defensa se opuso por entender que debía previamente mostrársele al testigo sus declaraciones. Ante tal oposición, el fiscal retiró su pregunta. Más adelante surge de nuevo la misma oposición por parte del abogado defensor cuando el fiscal interrogó al testigo en cuanto al número de declaraciones que había prestado en la investigación de este caso. Es obvio que este interrogatorio no era tendente a impugnar la veracidad del testigo porque éste hubiese hecho manifestaciones contrarias a las presentes en sus declaraciones anteriores. No teniendo el interrogatorio del fiscal el alcance de impugnar la veracidad del testigo, el artículo 245 del Código de Enjuiciamiento Criminal no es de aplicación. No obstante, en el supuesto caso de existir el error alegado por no haberse cumplido con las disposiciones del referido artículo 245, éste carece de importancia suficiente para acreditar la revocación de la sentencia dictada por la corte inferior. Véase *Pueblo* v. *Lebrón,* 61 D. P.R. 657.

9, 10, 12, 13, 16 y 18. Se refieren todos y cada uno de estos señalamientos a sendos errores que a juicio del apelante cometiera la corte inferior en sus instrucciones al jurado.

Del récord del caso no aparece que el apelante tomara excepción específica contra las instrucciones de la corte al jurado relacionadas con dichos señalamientos. Tampoco aparece que solicitara expresamente instrucciones al jurado sobre los mismos extremos, dando así una oportunidad a la corte a quo de corregir cualquier error cometido o cubrir cualquier omisión en que hubiere incurrido al dar sus instrucciones. Es innecesario, siendo esto así, entrar en la consideración de los referidos errores, pues si la defensa tuvo su oportunidad de impugnar las instrucciones dictadas por la corte al jurado, y dejó de hacerlo, con su proceder ha re-

nunciado a cualquier error que existiera en dichas instrucciones. Tampoco aparece del récord que el acusado hubiese solicitado instrucciones especiales en cuanto a los extremos abarcados en los errores antes indicados. Véanse: *Pueblo* v. *Ramos,* 36 D.P.R. 821; *Pueblo* v. *Figueroa,* 26 D.P.R. 754; *Pueblo* v. *Ramírez de Arellano,* 25 D.P.R. 263; *Pueblo* v. *García,* 64 D.P.R. 290, 293; *Pueblo* v. *Garay,* 64 D.P.R. 106, 108; *Pueblo* v. *Díaz,* 63 D.P.R. 987, 993 y *Pueblo* v. *Valentín,* 63 D.P.R. 787, 793.

Al comentar los errores 9 y 10, el apelante se queja de que la corte inferior invadió las atribuciones del jurado al afirmar en sus instrucciones que el policía Vizcarrondo había tratado de arrestar a Roig y sus compañeros, dando por sentado como hecho probado que dicho policía trató de ejecutar tal arresto sin justificación alguna, no obstante ser contradictoria la prueba sobre este extremo, invadiendo en esta forma las atribuciones del jurado como juez exclusivo de los hechos y la apreciación de la prueba. No es cierto que la prueba, en cuanto a este particular, sea contradictoria. Los hechos ejecutados por el policía Vizcarrondo al intervenir con Roig y sus compañeros, son más elocuentes que las palabras del propio policía, testigo de la defensa. Un cuidadoso análisis de esta prueba nos lleva a la indiscutible conclusión de que el propósito del policía era arrestar a Roig y sus compañeros, no porque éstos observaran ante él una conducta ofensiva y tumultuosa o cualquier otro acto ilegal en su presencia que justificara un arresto por dicho funcionario del orden público, sino que fué consecuencia directa del requerimiento o indicaciones del acusado al policía con motivo de los daños causados a dicho acusado en su *bar* momentos anteriores y en ausencia del referido policía; todo lo cual aparece tanto de la prueba de cargo como de la de defensa, no existiendo, por tanto, contradicción alguna en cuanto a este extremo.

■ Al discutir los errores 9 y 10, hemos entrado incidentalmente en la consideración del señalado bajo el núm. 11 por estar éste estrechamente relacionado con aquéllos. Ahora comentando especialmente éste último debemos agregar que la corte inferior no erró al denegar la instrucción especial solicitada por la defensa al efecto de que el policía Vizcarrondo tenía derecho a proceder al arresto de Roig y sus compañeros sin la correspondiente orden de arresto, si éstos en su presencia alteraban la paz pública, observando una conducta ofensiva, tumultuosa, encontrándose en estado de embriaguez en la vía pública. Ya hemos dicho anteriormente que de la prueba no aparece la comisión de delito alguno por Roig y sus compañeros en presencia del policía y que lo que motivara el propósito de este policía de arrestarlo fué el incidente ocurrido en ausencia del tantas veces citado policía en el Bar Venecia del pueblo de Juncos. Por lo tanto no procedía se instruyera al jurado sobre este extremo.

■ En cuanto al error marcado con el núm. 16 referente a supuestas instrucciones erróneas sobre defensa propia, debemos agregar a lo anteriormente dicho que no se tomó excepción ni se solicitó instrucción adicional alguna y que las instrucciones dadas por la corte exponen correctamente la materia sobre defensa propia y se ajustan a la ley, tanto en su forma como en su fondo. Véanse: *Pueblo* v. *Valentín,* 63 D.P.R. 787 y *Pueblo* v. *Guzmán,* 61 D.P.R. 634.

Agregamos a lo ya dicho en cuanto al señalamiento de error núm. 18, que las instrucciones dadas por la corte al jurado exponen correctamente los hechos de este caso y se ajustan razonablemente a la ley. Véase *Pueblo* v. *Valentín,* supra.

■ Alega el apelante que la corte inferior erró al no admitir en evidencia el Libro de Novedades del Cuartel de la Policía Insular de Juncos, en el que se hicieron los asientos relativos a los hechos ocurridos y que motivaron el proceso de este caso. Sostiene que es evidencia suprimida vo-

luntariamente, puesto que el fiscal había citado al Jefe de la Policía Insular de Juncos con el referido libro para ofrecerlo como prueba. Entendemos que no existe tal supresión de prueba, puesto que el contenido de dicho libro era informe dado por el propio policía Vizcarrondo, quien declaró con lujo de detalles en la vista de este caso sobre todo lo ocurrido en el día de los sucesos. Hubiese sido procedente la presentación de dicho libro como prueba, por una u otra parte, si se hubiese tratado de impugnar la declaración del testigo o de refrescar su memoria.

■ Alega el apelante que la corte inferior erró al denegar las instrucciones solicitadas por el acusado en el sentido de que es al jurado a quien corresponde determinar si la declaración prestada por el acusado ante las autoridades militares fué hecha o no voluntariamente y desecharla si creían que no fué voluntaria.

En cuanto a la declaración antes aludida, ya hemos resuelto que ésta no es otra cosa que lo que se conoce como un "exculpatory statement", mediante el cual una persona trata de protegerse declarando que no tuvo participación alguna en el hecho delictivo que se investiga. Esto no constituye una confesión ni tampoco una admisión por parte del acusado, pero no obstante, la corte inferior en sus instrucciones al jurado informó a éste que le incumbía apreciar si tal declaración fué prestada voluntaria o involuntariamente, dándole el valor que estimase procedente. Siendo esto así, no se ha cometido el error alegado.

■ Sostiene el apelante que el veredicto de homicidio voluntario es contrario a derecho y a la prueba.

Para una mejor comprensión de este señalamiento transcribimos, en síntesis, la prueba que tuvo ante sí el jurado que entendió en este caso.

La de cargo demostró que en el día de autos el interfecto José María Roig, Antonio Torres Ortiz y Carmelo Ortiz Cay, entraron al Bar Venecia, en el pueblo de Juncos, tomaron

algunas bebidas y en presencia del acusado, quien era el encargado o administrador de dicho Bar, rompieron algunos vasos y botellas, rompiendo Roig una vitrina. Tan pronto como dichos tres individuos hubieron salido del Bar, 'el acusado salió dirigiéndose a su casa y encontrando en el camino al policía Vizcarrondo, le informó sobre lo que había sucedido. El acusado regresó al establecimiento, armado de una pistola. Encontrándose en el Bar el policía Vizcarrondo y el acusado, volvieron a pasar por allí Roig y sus compañeros, quienes se dirigían a otro sitio para comer. El acusado los señaló al policía Vizcarrondo como las personas que habían hecho el daño en su establecimiento y entonces Vizcarrondo se dirigió hacia ellos, les dijo que estaban arrestados y que fueran al Cuartel con él. Al negarse Roig y sus acompañantes a someterse al arresto, el policía Vizcarrondo hizo ademán de sacar su revólver y entonces Ortiz Cay le aguantó la mano y se agarró con el policía, luchando ambos por breves momentos, mientras se aproximaban Roig y Torres. En un momento en que Torres se separó de los dos que luchaban, el acusado sacó su pistola y disparó contra Torres, hiriéndolo. Después de disparar contra Torres y caer éste en el suelo, siguió Ortiz Cay en su lucha con Vizcarrondo hasta entrar en un puesto de verduras inmediato, entrando también Roig luchando con el policía; y que entonces en esos momentos se acercó el acusado a la puerta de dicho puesto de verduras y a indicaciones de alguien retrocedió, pero volvió nuevamente hasta los escalones del puesto y desde allí hizo otro disparo de pistola contra Roig que le produjo la muerte en el acto y luego continuó haciendo dos disparos más contra Ortiz Cay, que aún estaba en lucha con el policía. Como consecuencia de estos disparos Ortiz Cay recibió dos heridas de bala.

La prueba de defensa tendió a demostrar que el policía Vizcarrondo fué atacado por Roig y sus acompañantes, y

que el acusado Millán actuó en defensa de dicho policía para impedir que se le privara de la vida.

El jurado tuvo ante su consideración la prueba que, en síntesis, se relata anteriormente y se resolvió el conflicto de la prueba en contra del acusado. La prueba de cargo sostiene el veredicto rendido en este caso por el jurado y no existiendo manifiesto error, prejuicio o parcialidad en la apreciación de la misma, no procede que este Tribunal intervenga con la sentencia dictada. Véase *Pueblo* v. *Valentín,* supra; *Pueblo* v. *Rodríguez,* 62 D.P.R. 778, 252; *Pueblo* v. *Garay,* supra, y *Pueblo* v. *García,* 64 D.P.R. 290.

 Se queja el apelante que la corte inferior erró al declarar sin lugar su moción de nuevo juicio. No apareciendo de los autos que se interpusiera recurso de apelación contra la resolución de la corte inferior declarando sin lugar dicha moción, este Tribunal carece de jurisdicción para conocer de este alegado error. Véanse: *Pueblo* v. *Ortiz,* 62 D.P.R. 258; *Pueblo* v. *Lebrón,* 61 D.P.R. 657, y *Pueblo* v. *Mediavilla,* 54 D.P.R. 565.

No habiéndose cometido los errores señalados en el caso de asesinato (*felony*); y apareciendo, además, probados todos y cada uno de los elementos de los delitos de portar y no registro de armas, procede la confirmación de las sentencias dictadas por la corte inferior en estos casos.

Los Jueces Asociados Sres. De Jesús y Córdova no intervinieron.